WILLIAM P. WRIGHT *vs.* HEALTH COMMISSIONER OF BOSTON.

Suffolk. March 1, 1948. — March 31, 1948.

Present: QUA, C.J., RONAN, WILKINS, & SPALDING, JJ.

*License. Stable. Boston. Health, Board of. Public Health. Administrative Board or Officer.*

A license, granted by the board of health of Boston under St. 1889, c. 89, § 1, to use a building as a stable "subject to the conditions of the statutes and ordinances" respecting stables in that city, was subject to conditions contained in statutes subsequently enacted, including the limitation as to time found in the provision of St. 1897, c. 300, § 4, that use of a stable pursuant to such a license might continue "until otherwise ordered by the board of health."

The provision of St. 1889, c. 89, § 1, that premises in Boston should not be used as a stable unless so authorized by the board of health and "only to the extent so authorized," contemplated that the license granted by the board should set forth the conditions of such use, including a limitation of time.

The provision of St. 1897, c. 300, § 4, that use of premises in Boston as a stable pursuant to a license granted by the board of health might continue "until otherwise ordered by the board of health," gave the board power to revoke the license for cause.

Sufficient cause for the revocation of a license to use premises in Boston as a stable might properly be found in a violation by the licensee of sanitary regulations applicable to the stable which had been adopted by the health commissioner under G. L. (Ter. Ed.) c. 111, § 31, as amended by St. 1937, c. 285, and which included a provision for revocation of the license by the commissioner "if in his judgment" such regulations had been violated.

The scope of a hearing held by the health commissioner of Boston as to the revocation of a stable license was not narrowed in the circumstances by a statement by an assistant corporation counsel conducting the hearing, shortly after the opening of the hearing, to the effect that it was being "held under authority in" certain statutes.

It was for the health commissioner of Boston as an administrative officer to determine whether violations of sanitary regulations pertaining to stables by the holder of a stable license were of sufficient gravity to justify the commissioner in revoking the license or were so slight as to merit no action.

Upon the whole record of a hearing held by the health commissioner of Boston as to the revocation of a stable license for violation of sanitary regulations, an arbitrary intent of the commissioner to revoke it regardless of the evidence was not shown by a statement by an assistant

corporation counsel conducting the hearing that the "commissioner has made up his mind that he is going to take some action."

The scope of hypothetical questions to a witness at a hearing held by the health commissioner of Boston as to the revocation of a stable license for violation of sanitary regulations was within the commissioner's discretion, as was also a testing of the witness's ability to give an opinion by a question as to conditions found by him at other stables which he had inspected.

PETITION for a writ of certiorari, filed in the Superior Court on February 7, 1945.

Following the respondent's return, the case was heard by *Williams*, J.

*R. H. Peacock*, (*P. J. Needham* with him,) for the petitioner.

*J. L. Vallely*, Assistant Corporation Counsel, for the respondent.

WILKINS, J. This is a petition for writ of certiorari to quash the action of the respondent in revoking a license to operate a stable at 33 Orchard Street in the Jamaica Plain district of Boston. From a judgment affirming that action the petitioner appealed. G. L. (Ter. Ed.) c. 213, § 1D, inserted by St. 1943, c. 374, § 4.

The case was heard, in accordance with the usual practice, on the petition and return. *Morrissey* v. *State Ballot Law Commission*, 312 Mass. 121, 124. The question is whether there is substantial error of law apparent upon the face of the return. *Real Properties, Inc.* v. *Board of Appeal of Boston*, 319 Mass. 180, 181, and cases cited.

The return shows that on June 29, 1944, the respondent gave the petitioner written notice of a public hearing on July 7, 1944, at which the petitioner might show cause why the license should not be revoked, and that on August 28, 1944, after hearing, the license was revoked "permanently." The return contains a stenographic transcript of the hearing, at which witnesses were examined by an assistant corporation counsel and by an attorney for the petitioner. The petitioner owned and operated the stable, where he kept not more than eighteen horses, and conducted a riding academy. The only license was one granted on April 21, 1892, by the board of health of the city of Boston to one

Williams.  It gave "permission" to occupy a wooden building on the premises as a stable for eighteen horses "subject to the conditions of the statutes and ordinances in relation to the erection and occupancy of stables in the city of Boston."  This meant not merely those statutes and ordinances presently effective but such as thereafter might be passed as well. *Head* v. *The University*, 19 Wall. 526, 530–531. *Lawrenceburg Roller Mills Co.* v. *Charles A. Jones & Co.* 204 Ala. 59, 62.  *Westport* v. *Kansas City*, 103 Mo. 141, 148.

At the time the permission was granted, there was in effect St. 1889, c. 89, of which § 1 provided: "No person shall hereafter occupy or use any building in the city of Boston for a stable unless *first authorized thereto* [1] by the board of health of said city, and in such case only to the extent so authorized, provided that this act shall not prevent any such occupation and use authorized by law at the time of the passage of this act, to the extent so authorized." See St. 1891, c. 220.

As the return does not show that there was any occupation or use of the premises at the time of the passage of the act, the proviso clause is immaterial.  It likewise does not appear from the return that Williams actually occupied and used the building as a stable.  If he did not, and the permission accorded to him was merely a personal right of his, it could not operate as a grant if not exercised, and would not run with the land.  *Hanley* v. *Cook*, 245 Mass. 563, 565. *Weiss* v. *Mayor & City Council of Woburn*, 263 Mass. 30, 33.  *Saxe* v. *Street Commissioners of Boston*, 307 Mass. 495, 498.  We, accordingly, assume in favor of the petitioner that Williams did occupy and use the stable as authorized until the passage of St. 1897, c. 300, § 1, which amended St. 1889, c. 89, § 1, so as to read: "No person shall hereafter occupy or use any building in the city of Boston for a stable unless *such use is authorized* [2] by the board of health of said city, and in such case only to the extent so authorized, pro-

---

[1] The italicized words were struck out in amendment by St. 1897, c. 300, § 1, and the words "such use is authorized" were substituted therefor.

[2] The italicized words were substituted by the amendment for the words which were struck out.

vided that this act shall not prevent any such occupation and use authorized by law at the time of the passage of this act, to the extent so authorized." And St. 1897, c. 300, § 4, added the following: "In any case in which a person has been or shall hereafter be granted a license or other authority to use a stable on any land in the city of Boston, such authority shall be construed to mean a license or authority to any person thereafter occupying the land, to occupy and use a stable on such land until otherwise ordered by the board of health of said city." See St. 1892, c. 419, § 115; St. 1895, c. 213, § 1; St. 1896, c. 332.

The phrase "to the extent so authorized" in the statutes of 1889 and 1897 shows an evident purpose that "the license itself should specify the extent of the right by setting out the conditions" under which a building might be occupied or used as a stable. See *Lowell* v. *Archambault*, 189 Mass. 70, 71. One of the conditions could be a limitation as to time. See *Commissioners of Public Works* v. *Cities Service Oil Co.* 308 Mass. 349, 361. A limitation as to time might be found in a subsequent statute to which the permission to Williams was subject. The phrase "until otherwise ordered by the board of health" in St. 1897, c. 300, § 4, gave a power of revocation.

We conclude that the authorization to Williams, being "subject to" statutes and ordinances, bound him by that limitation, which was in conformity with St. 1889, c. 89, § 1, conferring a discretionary power upon the board of health to give a right which would be valid "only to the extent so authorized." Hence that authorization fell within the effective sweep of St. 1897, c. 300, § 4, which has never been repealed and restricts the duration of a license or authority already granted to a period which was "until otherwise ordered by the board of health." Consequently, the case at bar differs from cases where a license or permit had been given unconditionally or statutory authority to revoke was lacking. See *Lowell* v. *Archambault*, 189 Mass. 70; *General Baking Co.* v. *Street Commissioners of Boston*, 242 Mass. 194.

In Boston the health commissioner exercises the powers

and performs the duties conferred or imposed by law upon the board of health. St. 1909, c. 486, §§ 9, 10. Revised Ordinances of Boston (1947) c. 17, § 1. The petitioner's contention that there was no statutory authority for the revocation is without merit.

We are not confronted by a revocation without cause, which would have lacked statutory justification and been inconsistent with natural justice and fair play. See *Fallon v. Street Commissioners of Boston,* 309 Mass. 244, 245, and cases cited. The hearing proceeded upon violations of "Regulations pertaining to stables and storing, handling, and disposal of manure," made by the respondent effective June 6, 1944, pursuant to G. L. (Ter. Ed.) c. 111, § 31, as amended by St. 1937, c. 285, which reads, "Boards of health may make reasonable health regulations." Section 5 of the regulations provides, "The health commissioner may revoke a permit to occupy or use premises for a stable at any time if in his judgment the sanitary regulations have been violated." As has been seen, the petitioner's stable license was subject to future statutes. The regulations were validly adopted under the enabling statute, and, if reasonable, controlled the conduct of the stable. There is nothing in the petitioner's assertion that the evidence as a whole establishes that the regulations were unreasonable as to his stable. Nor is such a conclusion required by anything said by the witness Horwood, who testified against the petitioner.

At this point it is necessary to consider the effect of a remark made by the assistant corporation counsel shortly after the opening of the hearing to the effect that "it was understood that this hearing is held under authority in G. L. c. 111, §§ 31, 155–158." Based upon this the petitioner argues that it was meant that the hearing was not under the revocation provision in § 5 of the regulations. We think that this is too narrow an interpretation. The reference to § 31 clearly points to the authority to make regulations conferred by that section. Most significantly, the next thing which occurred at the hearing was the introduction of the stable regulations in evidence. This is not a substantial error apparent on the face of the return.

The petitioner contends that the evidence was insufficient to warrant a finding of violation of the regulations or to warrant a revocation. We do not agree. No useful purpose would be served by a detailed statement of the evidence. It is enough to say that the respondent would have been warranted in finding, among other things, that there had been violations of regulations relating to screening, to conducting the stable so as to be "free from nuisances due to flies, odors, rats and vermin," to storage of manure, and to prevention of fly breeding. The petitioner admits that there was "considerable evidence of rat harborage but no evidence of rats," and that there was "evidence of minor violations which could not be corrected, because of shortages, scarcity of help and war priorities, over which the petitioner could have no control." If the violations existed, the license was properly revoked. *Fallon* v. *Street Commissioners of Boston,* 309 Mass. 244, 246–247, and cases cited. It is not for the petitioner to argue that the violations were so slight as to merit no action. That was for the respondent to determine. We cannot say that as an administrative officer he was not justified in the action taken.

The petitioner asserts that the respondent's action was arbitrary and unjust. The only matter deserving discussion in this connection is that, during a colloquy preceding the exclusion of a question which the petitioner's counsel had asked Dr. Horwood on cross-examination, the assistant corporation counsel said, "The commissioner has made up his mind that he is going to take some action." It will be noted that the statement was not made by the respondent. Moreover, at the time of the statement, the testimony of the acting chief inspector of the health department of the city had been completed, as had been the direct examination of Dr. Horwood. Both witnesses had made reports as to the conditions at the stable to the respondent, one on June 13, 1944, and one on June 29, 1944, and both reports and the regulations had been admitted in evidence. The date of the notice to the petitioner to show cause why the license should not be revoked was June 29, 1944, and the respondent must have been aware of the contents of the

reports at that time. We reject the petitioner's contention that this remark arguendo of the assistant corporation counsel shows an intent on the part of the respondent to revoke the license regardless of what the evidence might disclose. *King* v. *Grace,* 293 Mass. 244, 247.

There was no error in the exclusion of two questions which the petitioner sought to ask Dr. Horwood on cross-examination. The first question was, "Assuming that it [the stable] did conform to the regulations and was so constructed, maintained and operated as to be just the way you want it, would there be any flies there?" Aside from valid formal objection, this comes under the rule that the scope of hypothetical questions was within the discretion of the commissioner which will not be reversed where it does not clearly appear to have been wrongly exercised. *Commonwealth* v. *Phelps,* 210 Mass. 109, 114. *Commonwealth* v. *Noxon,* 319 Mass. 495, 538. The other question relating to whether the witness found a fly menace in twelve other stables he inspected for the health department raised many collateral issues. In so far as there may have been an attempt to show the alleged delinquencies of others, it was not of benefit to the petitioner. *Worcester Board of Health* v. *Tupper,* 210 Mass. 378, 382. In so far as there was an effort, as stated by counsel for the petitioner at the hearing, to test the ability of the witness to give an opinion in his report that there was the "existence of a serious fly nuisance" and to set up that opinion as a standard, it was a discretionary matter. That the petitioner was not prejudiced clearly appears. The witness also stated in his report, "the existence of hundreds of flies, inside and outside the stable, testifies to the fact that fly breeding has not been prevented and that a fly nuisance does exist."

*Judgment affirmed.*