Cities Service Oil Company *vs.* Board of Appeals of Bedford.

Middlesex. December 5, 1958. — March 18, 1959.

Present: Wilkins, C.J., Ronan, Williams, Counihan, & Whittemore, JJ.

*Zoning. Permit. Abandonment. Waiver. Board of Appeals. Equity Pleading and Practice, Zoning appeal.*

Evidence warranted a conclusion that a company granted a permit by the board of appeals under the zoning by-law of a town to use land in a business district for a filling station "based on plot plan . . . and photograph of type of building which you intend to construct" did not abandon its rights under that permit, notwithstanding that, nearly two years after the granting of the permit and after the company had obtained permits to store gasoline and fuel oil and to build and had taken title to the land, the company changed its building plans and applied for a new building permit to replace the earlier one, which had lapsed, and, upon refusal of the building inspector to issue a new building permit and in order to obtain it, petitioned the board of appeals for a public hearing "to hear further evidence" on the original petition for a zoning by-law permit, at which hearing the company presented the changed building plans as equivalents of the original plans. [723–725]

A finding that a company granted a permit by the board of appeals under the zoning by-law of a town to use land in a business district for a filling station "based on plot plan . . . and photograph of type of building which you intend to construct" waived its rights under that permit was not warranted where it appeared that, although the company changed the plans of the proposed building after receiving a building permit and allowed the building permit to lapse, and, upon refusal of a new building permit, petitioned the board of appeals for a public hearing "to hear further evidence" on the original petition for a zoning by-law permit and participated in that hearing after it became apparent that the board was hearing evidence relevant to a discretionary grant of a zoning by-law permit, the later petition was reasonably construable as presenting the issue of the company's right to proceed under the changed building plans without a new zoning by-law permit, the company indicated that it so construed the later petition, and the

board did not rule that the proceeding was to obtain a new zoning by-law permit after abandonment of the original one but received evidence relevant to the equivalence of the original building plans and the new building plans and first construed the later petition as one asking only for a new zoning by-law permit when it denied the later petition. [725–726]

This court on the evidence before it determined that there was no basis for a finding that the "type of building" on which the zoning board of appeals of a town based a permit allowing a company to use land in a business district for a filling station was materially changed with respect to zoning by new plans of the company for a somewhat smaller building with masonry substituted for porcelain enamel and less glass used. [727]

A decree of the Superior Court adjudging that a decision of the zoning board of appeals of a town denying a petition did not exceed its authority was reversed and a final decree ordered entered annulling the decision of the board as beyond its authority where it appeared that such decision by necessary implication asserted invalidity of a zoning by-law permit granted by the board to the same petitioner two years before, but that the issue of the validity of that permit had not been lawfully adjudicated. [728]

BILL IN EQUITY, filed in the Superior Court on May 29, 1957.

The suit was heard by *Lurie*, J.

*William B. Sleigh, Jr.*, for the plaintiff.

No argument nor brief for the defendant.

WHITTEMORE, J.   This is an appeal from a final decree which adjudged that a decision of the zoning by-law board of appeals of Bedford did not exceed its authority. The record brings before us a report of material facts and the evidence in the form of a "condensation of portions of the transcript," approved by the judge, and the exhibits.

The judge found that on August 9, 1955, the board of appeals granted to the plaintiff a permit to use land on Great Road, Bedford, for a filling station under the provisions of the by-law applicable to business districts.[1]   The

---

[1] "Section V.   Business District Uses   In a business district no building shall be erected or altered and no building or premises shall be used for any purpose injurious, noxious, or offensive to a neighborhood by reason of the emission of odor, fumes, dust, smoke, vibration, or noise or other cause, nor for any purpose except . . . 3. Filling station, garage, or storage of automobiles, if authorized by the board of appeals. . . . Section X. . . . 3. [The board of appeals] . . . shall act . . . subject always to the rule that it shall give due consideration to promoting the public health, safety, convenience

condition of the permit, so far as now relevant, was that it was "based on plot plan . . . and photograph of type of building which you intend to construct." The plaintiff on September 8, 1955, obtained from the selectmen a permit to store gasoline and fuel oil and on March 28, 1956, from the building inspector, a building permit. Thereafter the plaintiff changed its plans and specifications and on March 20, 1957, applied for another building permit, to replace the earlier one which had lapsed because not acted on within six months. The building inspector declined to issue the permit because of the change in plan, and the plaintiff's representative then consulted with the clerk of the board of appeals and signed in blank a petition for a public hearing dated May 1, 1957, "which contained words added by the . . . clerk in accordance with the conversation had by him with" the plaintiff's representative. This petition was for a public hearing by the board "to hear further evidence on petition of Cities Service Oil Co., to allow construction and operation of gasoline filling station on parcel of land . . . [described]." Notice containing this substance was duly given and a hearing was held on May 15, 1957, at which the plaintiff presented the altered plans and specifications. The board by letter of May 16, 1957, notified the plaintiff that in its opinion the use of the land for a filling station would not be to the best interests of the town because "1. The station at this location would be a great safety hazard, far greater than any other existing station in the town. 2. The location of the pumps as shown on your plan is too close to the highway and to the sewer easement. 3. The parking area is too limited. After long debate the board voted unanimously to deny your petition."

The judge found upon all the evidence that the plaintiff failed to take advantage of the first permit and allowed the building permit to lapse, and that, if the second "petition

and welfare, encouraging the most appropriate use of land and conserving property value, that it shall permit no building or use injurious, noxious, offensive, or detrimental to a neighborhood, and that it shall prescribe appropriate conditions and safeguards in each case.".

did not contain what the plaintiff wanted, the opportunity was its to call this to the attention of the defendant board"; that because of its failure to do this, and the form of the notice given to parties in interest, "the board was justified in assuming that the plaintiff had abandoned its original plans and was reopening de novo its application for a special permit . . . [and this] is a reasonable inference as to the meaning of the words contained in the second petition." The judge also found that if the plaintiff's representatives were surprised at the questions asked and were unprepared the plaintiff could have sought a postponement and there was no evidence of such a request. See *Manchester* v. *Selectmen of Nantucket,* 335 Mass. 156, 159.

The findings of the judge also stated that the plaintiff sought by testimony to show what took place at the hearing and to dispute the reasons given by the board for its decision and that the board introduced evidence to the contrary of the plaintiff's contentions; that much weight must be accorded to the judgment of the local legislative body and that "upon all of the evidence I do not believe I am warranted in finding that the defendant board was without justification in its conclusions. Upon the evidence and applying the rule that the granting of a special permit is equally a matter of discretion with the board of appeals as an application for a variance, *Pendergast* v. *Board of Appeals of Barnstable,* 331 Mass. 555,[1] I rule as matter of law that the board did not exceed its authority in denying the second petition . . . ."

There was undisputed testimony that the plaintiff exercised an option to buy the parcel and took title September 14, 1956, that taking of title had been delayed because of a question of a boundary "requiring many surveys," that in May, 1956, the plaintiff granted, or caused the then holder

---

[1] In the view we take of this case it is not necessary to rule on the extent to which findings may be required in respect of the issues deemed material by the board in exercising its discretion to deny the petition, notwithstanding the holding of the *Pendergast* case that in such a matter of discretion a landowner who has not prevailed in his application "commonly has no right enforceable in court" (p. 557).

of the title to grant, to the town for $1 an easement to confirm a right in the town to maintain a sewer already laid in the parcel, and that the delay after title was taken was because "it appeared that the foundations of the building . . . would have to be altered and . . . the policy of the company had changed as to the type of building." The plaintiff's engineer in 1957 made application to the building inspector for a building permit and was told he "would have to take the application to the board of appeals." The engineer told the clerk of the board "what the building inspector had told him . . . what Cities Service wanted — the change in plans from the original." At the hearing, on May 15, 1957, attended by "two representatives of Cities Service Oil Company" an abutting owner who had a station which would be in competition objected to the petition, and a member of the board brought up the subject of traffic hazard. The "condensation of portions of the transcript" then reads, ". . . [the plaintiff's real estate supervisor for the New England region] informed the board that he was not prepared to combat any opposition on that ground; that he had come for the purpose of requesting a new building permit; that at no time prior to the hearing had he received any notice or intimation that the question of traffic conditions or . . . continuation of the filling station permit would be raised or that there was a requirement with respect to parking area or that a question of moving the pumps or changing their location would be brought up at the hearing."

1. There is no finding that the plaintiff abandoned its rights under the 1955 zoning by-law permit; such a finding is not necessarily implied; we think the evidence warrants the conclusion, which we draw, that the plaintiff did not abandon those rights.

The 1955 permit in effect zoned the land for the use specified in the permit; under and because of it and the action taken in reliance upon it the property acquired a new and valuable characteristic, which was not lost by failure to proceed promptly to exercise the new use. Failure to proceed under the building permit was not significant. *LaCharite*

v. *Board of Appeals of Lawrence,* 327 Mass. 417, 422. Compare *Shemeth* v. *Selectmen of Holden,* 317 Mass. 278 (surrender). See, for rights to permits where action under them has been taken, *Quinn* v. *Middlesex Elec. Light Co.* 140 Mass. 109, 111; *Lowell* v. *Archambault,* 189 Mass. 70, 72; *Hanley* v. *Cook,* 245 Mass. 563, 565; *Inspector of Bldgs. of Watertown* v. *Nelson,* 257 Mass. 346, 352; *Selectmen of Topsfield* v. *Department of Pub. Util.* 267 Mass. 343, 349. Compare *Fallon* v. *Street Commrs. of Boston,* 309 Mass. 244; *Woodbury* v. *Municipal Council of Gloucester,* 318 Mass. 385; *Wright* v. *Health Commr. of Boston,* 322 Mass. 535.

For abandonment there must be intent to abandon and voluntary conduct which carries the implication of abandonment. *Pioneer Insulation & Modernizing Corp.* v. *Lynn,* 331 Mass. 560, 565 (discontinuance of nonconforming use). And see cases, cited *infra* point 2, stating the necessity of intent if waiver is to be found.

There was plainly neither the necessary intent nor conduct prior to the petition to the board in May, 1957. The evidence of events prior to May 1, 1957, shows only reliance on the permit and intent to use it.

The only clearly shown intent of the plaintiff after May 1, 1957, was to obtain a building permit. Otherwise the conduct was ambiguous in aspect but the evidence does not show that in fact the plaintiff intended to give up the only assurance which it had that it could use the land for a filling station.

What the plaintiff first applied for in 1957 was another building permit. The plaintiff called on the clerk of the board as a step in the effort to obtain such a permit. The plaintiff, of course, adopted the petition as prepared by the clerk. But that petition did not ask for a new zoning by-law permit, and requesting the board "to hear further evidence" on the original petition was not inconsistent with an expectation that, if the further evidence showed that the new plan was, in zoning by-law substance, the equivalent of the first plan, the board would order the building inspector to issue the building permit. It was not unreasonable for

the plaintiff's representative to believe that this was the proper or required way to get the building inspector to act favorably. The plaintiff at the hearing declared its intent; it "had come for the purpose of requesting a new building permit."

We assume that the plaintiff's conduct was such as to support the finding that it was reasonable for the board to draw an inference from the words in the May petition that the plaintiff was proceeding entirely anew. The plaintiff failed to claim an appeal [1] from the refusal of the building inspector to issue a permit, it used the form by which new permits are sought, and it adopted language not inappropriate for a petitioner seeking a reopening of the entire issue. But we are further informed as to the plaintiff's actual intent and we think it is shown to be to do no more than was necessary to obtain a building permit.

2. There is plainly an implied finding that the plaintiff waived its rights under the 1955 zoning by-law permit, but this we think is not sustainable on the evidence. Although intent to give up a known right is necessary for waiver (*Sheehan* v. *Commercial Travelers Mut. Acc. Assn.* 283 Mass. 543, 552–553; *Metropolitan Transit Authy.* v. *Railway Exp. Agency, Inc.* 323 Mass. 707, 709, and cases cited), we assume that the plaintiff before a board of appeals, as in court, may be held to the waiver of a right, if its conduct reasonably declares such intention and the hearing then proceeds as though the right had been given up or was not relied on. See *Dalton* v. *Post Publishing Co.* 328 Mass. 595, 599. But we do not think it could be found that the hearing before the board did so proceed, whatever the apparent meaning of the plaintiff's conduct.

---

[1] General Laws c. 40A, § 13, provides: "An appeal to the board of appeals established under section fourteen may be taken by any person aggrieved by reason of his inability to obtain a permit from any administrative official under the provisions of this chapter, or by any officer or board of the city or town, or by any person aggrieved by any order or decision of the inspector of buildings or other administrative official in violation of any provision of this chapter, or any ordinance or by-law adopted thereunder. A zoning ordinance or by-law may prescribe a reasonable time within which appeals under this section may be taken," and the by-law incorporates the relevant substance of the statute.

Continued participation in the proceedings after it appeared that the board was hearing evidence relevant to the question of the discretionary granting of a permit could be found to be acquiescence in a construction of the petition as sufficient to present that issue. *Manchester* v. *Selectmen of Nantucket*, 335 Mass. 156, 159. But recognition that such issue was before the board is not inconsistent with asking that the board decide first whether the plans were essentially equivalent so that the plaintiff could have a building permit without the issuance of a new zoning by-law permit. Nor is it inconsistent to hold a permit to build a building of type A and to institute proceedings to ascertain whether the board will let a type B building be built on the same parcel. The petition was reasonably construable as presenting the issue of the right to proceed under the new plan without a new zoning by-law permit. The plaintiff showed by express statement that it so construed it; the board did not rule that it was construing the proceedings as on a petition for a new zoning by-law permit after abandonment of the 1955 permit; and it received evidence relevant to the issue of plan equivalence. Charging the plaintiff with the maximum effect of its participation in the hearing as one which dealt with the suitability of the lot for a filling station, did not show, with sufficient force for purposes of a waiver, more than an intent to proceed under a petition having the double aspect above stated.

The first time that the board showed that it did, perhaps, construe the intent as only to ask for a new permit after having given up the 1955 permit, was in the decision from which the plaintiff appealed. The ambiguity of the plaintiff's conduct was not resolved by the statement or action of anyone at the time when such conduct could have operated as a waiver. What the plaintiff did therefore was not a waiver, and the reasonableness of the board's inference, as found by the judge, cannot determine the issue.

3. Although, for reasons stated in point 4, *infra*, a ruling in respect of the equivalence of the 1955 and 1957 plans would not dispose of the issue, we think that we should

state our view.  Of course, if the issue again arises there may be other and different evidence, but on the evidence before us there is no basis for a finding that the "plot plan . . . [or] type of building" had been materially changed. The 1957 plan shows the station and pumps a little farther away from the street line.  The testimony was that "the interior layout is practically the same, the location on the lot is essentially the same, the amended plans show a slightly smaller station, the height would remain the same, the materials used in both are fireproof throughout; but the external appearance would be changed considerably, the exterior finish of the original building was to be porcelain enamel and of the amended plan masonry," which was a cheaper construction.  We assume that on this testimony alone the change in the outside appearance could be found material for we assume that the architecture and decoration of a filling station may be of zoning by-law concern at least where a permit is required.  But there are in the exhibits two photographs of a station like that proposed in 1955 and also a colored cut which pictures the 1957 proposal.  The appearance of each building is about the same except that more glass is used in the 1955 building.  We conclude that the lessened cost came primarily in the slight reduction in size and the giving up of the porcelain enamel and some glass.  We think no one could reasonably find that the changed appearance made any difference aesthetically or otherwise under the zoning by-law.  We do not think that reference to the photograph in the 1955 permit to show the "type of building" on which the permit was based restricted the plaintiff to the kind of exterior finish and the amount of glass shown in that photograph.

4. The decision of the board cannot be sustained in any aspect.  It does not purport to revoke the 1955 permit.[1]

---

[1] Even had the permit been revocable in May, 1957, and we intend no suggestion that it was, the board could not have revoked it without express notice and hearing.  *Manchester* v. *Selectmen of Nantucket*, 335 Mass. 156. *Piona* v. *Alcoholic Beverages Control Commn.* 332 Mass. 53.  *McPherson* v. *Board of St. Commrs. of Boston*, 251 Mass. 34.  *Higgins* v. *License Commrs. of Quincy*, 308 Mass. 142.  *Woodbury* v. *Municipal Council of Gloucester*, 318 Mass. 385.

Even if the decision could be construed as implying a finding against the plaintiff on the issue of plan equivalence it makes no specific findings or statements of reasons on which such action could be reviewed (G. L. c. 40A, § 18). We need not determine the effect of the absence of express notice to interested parties, or whether a statement at the hearing that the board would rule on that issue would have sufficed. The decision by necessary implication asserts the invalidity of the 1955 zoning permit. As this issue has not been lawfully adjudicated the decision must be annulled. There is nothing to bar a renewed application by the plaintiff for a building permit. If because of some aspect of the 1957 plot plan and the building design not apparent on the evidence shown us the building inspector deems the new project a materially different one, subsequent proceedings under the by-law and statute will be available to the plaintiff. Compare G. L. c. 40A, § 20.

5. The final decree is reversed. A final decree is to issue in the Superior Court annulling the decision of May 16, 1957, as beyond the authority of the board of appeals.

*So ordered.*