BUILDING INSPECTOR OF CHELMSFORD *vs.* WILLIAM C.
BUXTON & others
(and a companion case[1]).

Middlesex.    October 5, 1961. — January 9, 1962.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Zoning,* Removal of soil.    *Real Property,* Removal of soil.    *Equity Plead-
ing and Practice,* Master: findings.

Expiration of a municipal building permit by reason of failure of the
landowner holding the permit to commence construction of the building
within a certain period terminated his right to remove sand and gravel
from his land under a provision of the municipality's zoning by-law
that "nothing herein contained shall prohibit the removal of . . . [sand
and gravel] in connection [with] the construction of a building for
which a permit has been duly issued."    [441]

A conclusion by a master in a suit in equity in which the evidence was not
reported, expressly based on "all the evidence and the . . . subsidiary
findings," was binding on the trial judge and on this court on appeal
where it was not inconsistent with the subsidiary findings.    [441–442]

Two BILLS IN EQUITY, filed in the Superior Court on Sep-
tember 15, 1960.

The suits were heard by *O'Connell, J.,* on the report of a
master.

*Warren W. Allgrove,* for the defendants.

*Vernon R. Fletcher,* Town Counsel, for the plaintiff.

KIRK, J.    The defendants appeal from a decree restrain-
ing them from removing sand and gravel for commercial
purposes from land owned by the defendant Roma Realty,
Inc., in a district in Chelmsford where such removal was
never permitted and is now specifically prohibited by an
amendment, adopted in 1956, to the zoning by-law of the
town.

The amendment (§ 3 [C] [5]) reads in part: "The re-
moval of sand, loam, sod and gravel for commercial pur-

---

[1] The companion case is a suit for declaratory relief brought by Roma
Realty, Inc., against the town of Chelmsford and its building inspector and
is referred to at the end of the court's opinion.

poses is expressly prohibited unless a permit is granted by the Board of Appeals after a public hearing. However, nothing herein contained shall prohibit the removal of the same in connection [with] the construction of a building for which a permit has been duly issued, or for landscaping of a lot from which sand, loam, and or gravel is removed. . . ."

The defendants contend that the removal is lawful because it is in connection with the construction on part of the land of a building for which a building permit was issued by the plaintiff, the inspector of buildings of the town. They do not contend before us that the removal constitutes a preëxisting nonconforming use.

The master to whom the cases were referred made detailed findings of fact which we summarize. Early in 1957, coincidental with the beginning of the construction of a State highway in the vicinity, the defendant Buxton, manager of Roma Realty, Inc., and, with his wife, owner of all its capital stock, submitted to, but did not file with, the town planning board plans showing a proposed industrial development with three buildings, roadways and a parking area on the southern half of the forty acre tract with which we are concerned. Three buildings, each to be fifty feet long and thirty feet wide, were to be located, as indicated on the plan, on that part of the tract which consisted of an undulating hill mass, seventy feet high at the highest point, near which, prior to 1944, small amounts of sand and gravel had been removed.

Thereafter in April, 1957, Buxton filed with the building inspector of the town an application for a permit to erect a research building on the tract. No plans were filed then or thereafter indicating where on the tract the research building was to be located. The application was approved, and a permit card was issued. This permit card by its own terms and under the town building code was required to be posted in a conspicuous place on the lot where the building was to be erected and was not to be removed until all work was completed. The card was posted on the premises from April 24, 1957, until April 1, 1958, when it was removed by Buxton and thereafter kept in his attorney's office.

The building code of the town provides in part: "Art. III. Any permit which may be issued by the Inspector under which work shall not commence within six months from the date of issuance, or is abandoned before completion, shall expire by limitation. . . ." For more than a year after the issuance of the building permit nothing was done toward the construction of the research building or any other building. In the summer of 1958, an excavation three feet deep, which conformed in length and width with the foundation required for one of the three buildings originally mentioned to the planning board, was dug at a site different from that indicated for any of the buildings on the plans shown to the planning board. This was the only step taken toward the construction of any building including the "research building." On the other hand, during and since 1957 large quantities of sand and gravel from the tract have been sold by Buxton to a contractor engaged in road building. This sand and gravel had been removed, not only from the place where sand and gravel had been dug prior to 1944, but from a large part of the hill earlier referred to, leaving an open pit seventy-five feet in height and approximately three hundred feet wide. Buxton has profited four to five thousand dollars per year from the sale of the material since 1957.

The master, having found that no work was begun within six months after the issuance of the building permit on April 24, 1957, correctly concluded that under the building code the permit expired by limitation on October 24, 1957. With the expiration of the building permit the right to remove sand and gravel also terminated, and upon this ground alone continued removal of sand and gravel became unlawful.

The master went further, however, and found that the removal of sand and gravel from the present pit is not being done in connection with the erection of a research building under the permit issued to Buxton on April 24, 1957. This conclusion, expressly based "[o]n all the evidence and the above subsidiary findings," comes within the

familiar rule that an ultimate finding by a master on unreported testimony, as here, must stand where there is nothing in the subsidiary findings that is inconsistent with his general finding. *Sprague* v. *Rust Master Chem. Corp.* 320 Mass. 668, 675, and cases cited. Contrary to the contention of the defendants, we think that this conclusion is supported by and is not inconsistent with other findings made by the master whether summarized by us or not referred to herein.

We mention a misdirected argument of the defendants. Because the master made a finding, somewhat irrelevant on the issue of the defendants' right to remove sand and gravel, that Buxton never abandoned his intention to build on the land, the defendants contend that the reasoning of *Cities Serv. Oil Co.* v. *Board of Appeals of Bedford,* 338 Mass. 719, is applicable, and that they are entitled to continue their operations. The factual situations in the two cases are quite dissimilar. In the *Cities Service* case we dealt, on the issue of abandonment, with a permit issued by the board of appeals, after hearing, authorizing a special use of land not permissible under the zoning by-laws unless so authorized. Here, in contrast, we simply have a building permit issued by the inspector of buildings subject to the terms of the building code. As we stated and explained in *LaCharite* v. *Board of Appeals of Lawrence,* 327 Mass. 417, 422, the two permits are entirely different in kind.

One procedural point remains. It does not appear that the suit for declaratory relief brought by Roma Realty, Inc., has been disposed of. A decree should be entered declaring that Roma Realty, Inc., has no right to remove sand and gravel from the premises for commercial purposes. The decree appealed from is affirmed with costs of appeal.

*So ordered.*