347 Mass. 486 (1964)
198 N.E.2d 624
SISTERS OF THE HOLY CROSS OF MASSACHUSETTS
vs.
TOWN OF BROOKLINE & another (and a companion case[1]).
Supreme Judicial Court of Massachusetts, Norfolk.
February 5, 1964.
May 13, 1964.
Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & REARDON, JJ.
Claude B. Cross (John M. Reed & Phillip Cowin, Town Counsel, with him) for the defendants.
Charles F. Mahoney for the interveners.
Henry M. Leen for the plaintiff.
SPIEGEL, J.
The plaintiff, Sisters of the Holy Cross (Holy Cross), in one suit against the town of Brookline (the town) and the Building Commissioner of the town of Brookline (Commissioner) seeks a declaration under G.L.c. 231A that its land in Brookline is not subject to the zoning by-law of the town and that it is entitled to a permit for the construction of a multipurpose college building. The other suit is an appeal by Holy Cross under G.L.c. 40A, § 21, from a decision of the Board of Appeals of the town of Brookline (board) denying the plaintiff's applications for a variance and a special permit allowing construction of the *488 building. A number of owners of single family private residential property within the same zoning district as Holy Cross were granted leave to intervene.
The suits were consolidated for trial in the Superior Court and were heard upon a "Statement of Agreed Facts," testimony, and various exhibits introduced at the trial which were made a part of the statement of agreed facts. In the suit for declaratory relief the judge (1) ordered a decree to be entered declaring that (a) the land of Holy Cross "is for educational purposes which are religious and sectarian within the meaning of Section 2 of Chapter 40A of the General Laws"; (b) the laws of the town limit the use of Holy Cross's land "within the meaning of Section 2 of Chapter 40A of the General Laws, for an educational use which is religious and sectarian and are therefore invalid insofar as they apply to the said use of" Holy Cross's land; and (c) the action of the Commissioner in revoking the building permit was illegal, and (2) ordered the Commissioner to forthwith issue a permit for the construction of the building. From a final decree in accordance with the foregoing the town, the Commissioner, and the interveners appealed.
In the suit under G.L.c. 40A, § 21, a final decree was entered dismissing the bill, "provided, however, that if, upon appeal in... [the suit for declaratory relief] the Supreme Judicial Court should determine that the zoning by-laws of the Town of Brookline are valid and do apply to the ... [plaintiff's] land, then, and in that event, the decision of the Board of Appeals in denying the variance and special permit is affirmed." Holy Cross appealed from this decree. The two suits are before us on a single record and the evidence is reported.
The record does not reveal any dispute over the pertinent facts. Holy Cross, a corporation organized under G.L.c. 180, is part of a religious order and operates a number of educational institutions, including three colleges, in thirty-two or thirty-three States. One of these colleges is the Cardinal Cushing College on Fisher Hill in Brookline which conducts a four year liberal arts course and a two year *489 junior college course. Its student enrollment consists of 240 women. Over a period of years Holy Cross acquired parcels of land in the area of Fisher Hill. The college has 309,360 square feet of land in the area. There are a number of buildings on this land, the largest of which is known as Trinity Hall. This building contains the administration offices, seventeen classrooms, assembly hall, and the like. Other buildings are used as residences for the faculty and students. On October 31, 1961, Holy Cross applied for a permit to erect a three story building comprising a dormitory, chapel, student center and other facilities on the parcel located on Fisher Avenue and containing 168,856 square feet of land. (There is presently on this parcel a spacious Georgian style house called Maria Assunta Hall.) At that time the zoning by-law in effect limited the height of buildings in that location to two and one-half stories and forty-five feet. On May 21, 1962, a new application was submitted which contained the following notation: "This application is an amendment filed at the request of the building Commissioner. See original application Dated Oct. 31 1961." A building permit was issued on the same day the new application was filed.
On May 23, 1962, at a special town meeting the then existing zoning by-law was stricken in its entirety and a new by-law was adopted. Under the new zoning by-law, the locus in question "lies partly in a S-15 and partly in a S-25 district." On May 24, 1962, the Commissioner revoked the permit issued to Holy Cross "since the plans on file do not conform in all respects with the provisions of the new Zoning By-Law adopted May 23, 1962 or the Zoning By-Law in effect prior thereto, and to minimized disfigurement of the location." No appeal to the board was taken from the revocation. On June 1, 1962, Holy Cross commenced its suit for declaratory relief. On July 16, 1962, Holy Cross filed a new application for a building permit. This was denied and Holy Cross appealed to the board, requesting in its appeal "whatever variance ... may be necessary to permit such construction." On August 7, 1962, an application for a special permit was filed with the board. *490 The board concluded that a proper case under G.L.c. 40A, § 15 (3), was not shown for granting "variances from the floor area ratio requirement of Section 5.00[2] or the yard requirement of Section 4.30[3] (Use 52)." The board also denied the application for a special permit for the reason that "a special permit for the desired use would be no good without the requested variances."
At the outset we consider the town's contention that "[t]he Superior Court had no jurisdiction to declare the by-law invalid." G.L.c. 185, § 1 (j 1/2), declares: "The land court shall be a court of record. It shall have exclusive original jurisdiction of the following matters: ... Petitions under section fourteen A of chapter two hundred and forty[4] to determine the validity and extent of municipal zoning ordinances, by-laws and regulations." This language is simple and unambiguous. It does not appear to be modified in any way relevant to the matter before us by the language of G.L.c. 40A, § 22.[5] The first sentence of § 22 *491 confers jurisdiction upon the Superior Court to enforce zoning by-laws adopted pursuant to the enabling act. "The ordinary meaning of `enforce' is `to compel obedience to,' `to cause to be executed.'" Larson v. New England Tel. & Tel. Co. 141 Maine, 326, 337. Ex parte Darnell, 262 Ala. 71, 81-82. Holy Cross in its bill does not ask that the court compel obedience to a zoning by-law but that it "enter a decree declaring that the land of the plaintiff ... is not subject to the zoning by-laws of the Town of Brookline." The second sentence of § 22 confers jurisdiction upon the Superior Court to hear an information by the Attorney General "for a declaratory decree to determine the validity" of a zoning ordinance or by-law. This paragraph is not a grant of general jurisdiction to the Superior Court to hear suits for declaratory decrees to determine the validity of zoning by-laws; it is a grant of specific equity jurisdiction and must be strictly construed. Proprietors of Charles River Bridge v. Proprietors of Warren Bridge, 6 Pick. 376, 394-395. Jones v. Newhall, 115 Mass. 244, 251-252. General Laws c. 231A, § 1,[6] does not expand the jurisdiction of the courts upon which it confers power to render declaratory decrees; the statute makes it clear that this power is conferred on the courts "within their respective jurisdictions." Worcester County Natl. Bank v. Commissioner of Banks, 340 Mass. 695, 697. Executive Air Serv. Inc. v. Division of Fisheries & Game, 342 Mass. 356, 357-358.
Holy Cross observes in its brief, "[t]his Court has, in the past, heard cases brought in the Superior Court under the declaratory judgment procedure, involving the validity or applicability of a zoning ordinance." It cites the case of Publico v. Building Inspector of Quincy, 336 Mass. 152. In that case the issue of jurisdiction does not appear to have been raised by the litigants, and though the court did not raise the issue on its own account, it did not necessarily intend *492 to assert jurisdiction. Paul Livoli, Inc. v. Planning Bd. of Marlborough, ante, 330. Cf. Riley v. Board of Police Commrs. 145 Conn. 1, 6. We distinguish the case of Leventhal v. Buehler, 346 Mass. 185, also cited by Holy Cross, which concerned the plaintiffs' rights to compel the performance of a contract and only incidentally involved the validity of a zoning ordinance. In the instant case, we are of opinion that the Superior Court lacked jurisdiction to hear the suit for declaratory relief, but the substantive issues have been presented and argued, and in view of the public interest we express our views on these issues. Gamer v. Zoning Bd. of Appeals of Newton, 346 Mass. 648, 649.
The town argues that its "by-law validly regulates floor area ratio and other dimensional matters under G.L.c. 40A, § 2."[7] This argument is based on several premises. It is contended that the statutory clause, "provided, however, that no ordinance or by-law which prohibits or limits the use of land for any church or other religious purpose or for any educational purpose ... shall be valid" (the proviso), is concerned "solely with use of land rather than dimensional requirements." Perhaps there are instances in which, notwithstanding the proviso, a town may impose "dimensional requirements" upon buildings that serve religious or educational purposes. From the record, it is clear that the present by-law would hold the proposed building of Holy Cross to the same dimensional requirements *493 as are imposed on detached single family dwellings.[8] We *494 think it unlikely that the Legislature would exempt religious and educational institutions from local regulations of use and at the same time permit this exemption to be virtually nullified by a requirement that such institutions construct their buildings on dimensions applicable to single family houses. Cf. Carr v. Riley, 198 Mass. 70, 74. We think that this by-law, as applied to Holy Cross, "limits the use" of its land and, therefore, we think such application invalid under G.L.c. 40A, § 2.
Statute 1950, c. 325, which inserted language similar to that of the proviso in G.L.c. 40, § 25, the predecessor of c. 40A, § 2, was titled, "An Act prohibiting discriminatory zoning by-laws and ordinances." It was in the light of St. 1950, c. 325, that this court decided the case of Attorney Gen. v. Dover, 327 Mass. 601. We do not agree with the town that "[t]he title of the proviso indicates that the intention of the Legislature was only to prevent discrimination." Whether, as the interveners maintain, "[t]he only use requirements of the Brookline zoning by-law here relevant are non-discriminatory" is immaterial; the by-law is invalid not because it may discriminate against particular educational or religious uses but because as it affects Holy Cross, it "limits the use of land" for an educational purpose within the proviso.
The interveners also contend that Holy Cross "has waived any exemption it might have under G.L.c. 40A, § 2, by submitting itself to the jurisdiction of the ... town, building commissioner and board of appeals." In support of this contention they cite only the case of Cities Serv. Oil Co. v. Board of Appeals of Bedford, 338 Mass. 719, 726. In that case this court said, "Although intent to give up a known right is necessary for waiver ... we assume that the plaintiff before a board of appeals, as in court, may be held to the waiver of a right, if its conduct reasonably declares such intention and the hearing then proceeds as though the right had been given up or was not relied on" (emphasis supplied). In the present matter, as the interveners aver, Holy Cross's proceedings before the board and its appeal *495 to the Superior Court from the board's decision were prosecuted "notwithstanding the pendency of ... the petitioner's own petition for declaratory judgment on the very issue of the applicability of the `Dover Amendment.'" Our cases show that waiver of a statutory right in proceedings before an administrative board will not be easily inferred as matter of law. Sheehan v. Commercial Travelers Mut. Acc. Assn. 283 Mass. 543, 552-553. Assessors of Dover v. Dominican Fathers Province of St. Joseph, 334 Mass. 530, 536. Publico v. Building Inspector of Quincy, 336 Mass. 152, 155. Cities Serv. Oil Co. v. Board of Appeals of Bedford, supra, 725-726. See Buck v. Kuykendall, 267 U.S. 307, 316-317. We believe that the very fact of Holy Cross's pending suit for declaratory relief shows in the absence of contrary evidence that, although it requested a variance and a special permit, it did not intend to abandon its rights under G.L.c. 40A, § 2, in the event a variance and a special permit were denied. Moreover, in its appeal to the board of July 18, 1962, it expressly stated that in "taking this appeal, ... [it] does not waive rights it may have under" G.L.c. 40A, § 2.
The town and the interveners raise issues concerning the constitutional validity of the proviso. The town in its brief contends that to exempt Holy Cross from the dimensional requirements of the Brookline zoning by-law "arguably would represent an arbitrary exercise of the police power and a denial of the equal protection of the laws guaranteed by the Constitution."[9] The equal protection clause of the Fourteenth Amendment to the United States Constitution[10] does not prohibit a State from making classifications which may result in the unequal treatment of various classes but only "precludes irrational discrimination as between *496 persons or groups of persons in the incidence of a law." Goesaert v. Cleary, 335 U.S. 464, 466. Jeffrey Mfg. Co. v. Blagg, 235 U.S. 571, 577. Gorieb v. Fox, 274 U.S. 603, 607. Tigner v. Texas, 310 U.S. 141, 147. Kotch v. Board of River Port Pilot Commrs. 330 U.S. 552, 556. Railway Exp. Agency, Inc. v. New York, 336 U.S. 106, 110. Price v. Railway Exp. Agency, Inc. 322 Mass. 476, 480-481. Undoubtedly, as the town maintains, under G.L.c. 40A, § 2, "owners of private property within a residence district would not be `treated alike and stand on the same footing.'" But we do not believe it irrational for the Legislature to determine that educational and religious institutions, because of their unique locational requirements and because of their importance to society generally, may be exempted from the application of zoning laws. See Note, "Churches and Zoning," 70 Harv. L. Rev. 1428, 1429-1430. We deem it significant that courts of other jurisdictions have reached the same conclusion even in the absence of a statutory basis therefor. Diocese of Rochester v. Planning Bd. 1 N.Y.2d 508, 525-526. Congregation Committee v. City Council of Haltom City, 287 S.W.2d 700, 705 (Tex. Civ. App.) State ex rel. Synod of United Lutheran Church v. Joseph, 139 Ohio St. 229, 248-249. Congregation Temple Israel v. Creve Coeur, 320 S.W.2d 451, 454-455 (Mo.), rehearing den. 320 S.W.2d 456.
The interveners argue that the proviso, if construed to exempt Holy Cross from the dimensional requirements of the zoning by-law, would violate the establishment clause of the First Amendment of the United States Constitution[11] (applicable to the States by reason of the Fourteenth Amendment), and they also state that it violates the Massachusetts Constitution. Their assertion with reference to the Constitution of this Commonwealth appears to be based solely on the Eleventh Amendment,[12] which so far as we can perceive *497 is in no way relevant to the facts which we are now considering.
In attempting to prove that the proviso, if construed to exempt religious institutions from the zoning laws, would violate the Federal establishment clause, the interveners appear to rely mainly on school prayer cases and cases involving sectarian use of public facilities. They cite the cases of Illinois ex rel. McCollum v. Board of Educ. 333 U.S. 203, and Engel v. Vitale, 370 U.S. 421. If there is any proper analogy between the instant matter and cases involving the application of the establishment clause to public education, the case most nearly in point would be Zorach v. Clauson, 343 U.S. 306, 313-315, involving the so called "released time" program in New York. The issue before us is not whether the Commonwealth may actively aid religious causes but (as in the Zorach case) whether it may make exceptions to requirements generally imposed in order to benefit organized religion. In the Zorach case, it was held that public school pupils who wished to receive religious instruction could be released for this purpose during the school day while pupils who did not wish to receive such instruction were required to remain in attendance. Under G.L.c. 40A, § 2, property owners in general are bound by the zoning by-laws and ordinances which towns and cities may pass whereas religious and sectarian or public educational institutions are exempt, at least in part, from the operation thereof. We do not think it an establishment of religion merely to exempt such institutions from some aspect of governmental supervision or restriction. More relevant *498 than the school cases are the cases involving the exemption of religious institutions from local and State taxation. The Supreme Court of California has ruled that such exemption (with regard to church supported schools) is not violative of the First Amendment. Lundberg v. County of Alameda, 46 Cal.2d 644, 654-655, dismissed for want of a substantial Federal question sub. nom. Heisey v. County of Alameda, 352 U.S. 921. See also Garrett Biblical Inst. v. Elmhurst State Bank, 331 Ill. 308, 318; Griswold College v. State of Iowa, 46 Iowa, 275, 282.
In any event, a sufficient answer to the interveners' contentions under the establishment clause is that the present bill for declaratory relief concerns an educational use rather than a religious use. This fact brings this bill squarely within the holding of Lundberg v. County of Alameda, supra. Thus, even if so much of the proviso as refers to a "religious purpose" were unconstitutional under the First Amendment, it could hardly be argued that the exemption of educational institutions from zoning laws constitutes an establishment of religion. Since the Legislature has authority to exempt schools in general from the operation of zoning laws, we are of opinion that this exemption may be applied to schools which are supported by denominational or sectarian interests. See Cochran v. Louisiana State Bd. of Educ. 281 U.S. 370, 375; Everson v. Board of Educ. 330 U.S. 1, 17-18. Indeed, if the Legislature had attempted to exempt from zoning laws only schools with no religious affiliation, the constitutionality of such distinction would be subject to considerable doubt. See Pierce v. Society of Sisters, 268 U.S. 510, 535-536.
We cannot agree with any of the reasons given in support of the town's contention that "[t]he plea in abatement in ... [the suit for declaratory relief] should be sustained." This contention appears to be based on the town's proposition that "[a]n owner may either proceed on the theory that he should have a variance and pursue the remedy provided in the Enabling Act, which is an exclusive remedy on the subject of variances, or he may attack the ordinance or *499 by-law in question by a petition in the Land Court." We find no statutory authority for the theory that one in the position of Holy Cross must choose between the administrative procedures of G.L.c. 40A and the declaratory relief procedures of G.L.c. 185, § 1 (j 1/2), or c. 231A, § 1. Holy Cross might prefer to obtain relief through the usual administrative channels and, if successful, thus avoid protracted litigation and perhaps maintain more amicable relations with its community and its neighbors. Furthermore, the standards on which variances are granted are far less rigid than those which the courts apply in determining the validity of a zoning by-law. See G.L.c. 40A, § 15 (3). Cf. Anderson v. Wilmington, ante, 302. Even if the standards for declaring a by-law invalid under the enabling act and for the granting of a variance thereunder were the same, legislation providing concurrent modes of relief for aggrieved parties is not unknown. See G.L.c. 31, §§ 43, 45. Cf. G.L.c. 32, § 16. See also Barrett v. Police Commr. of Boston, ante, 298. We are of opinion that the discussions of jurisdiction and waiver, supra, obviate the need to give further consideration to this contention; the defendants' plea in abatement did not show any grounds on which it should have been sustained.
Inasmuch as it is our view that the land owned by Holy Cross was exempt from the operation of the town's zoning by-law there is no need for us to comment on whether Holy Cross was entitled to a variance. The final decree in the suit under G.L.c. 40A, § 21, is reversed and a final decree is to be entered stating that the decision of the board of appeals did not exceed its authority, that no modification of its decision is required, and that the clerk of the court within thirty days after the entry of the decree send an attested copy thereof to the board.
In the light of the lack of jurisdiction the final decree entered in the Superior Court in the suit for declaratory relief is reversed and a decree is to be entered dismissing the bill.
So ordered.
NOTES
[1] The companion case is by the same plaintiff against the Board of Appeals of Brookline.
[2] The regulations for each district pertaining to minimum lot size, minimum lot area per dwelling unit, minimum lot width, maximum height of buildings, maximum floor area ratio, minimum usable open space per dwelling unit, minimum front yard depth, minimum side yard width, minimum rear yard depth, minimum setback distance of top of wall from any lot line, shall be as specified in this section, "Table of Dimensional Requirements", subject to the further provisions of Article 5.
[3] A table of use regulations. See fn. 8, infra.
[4] "The owner of a freehold estate in possession in land may bring a petition in the land court against a city or town wherein such land is situated, which shall not be open to objection on the ground that a mere judgment, order or decree is sought, for determination as to the validity of a municipal ordinance, by-law or regulation, passed or adopted under the provisions of sections twenty-five to thirty A, inclusive, of chapter forty or under any special law relating to zoning, so called, which purports to restrict or limit the present or future use, enjoyment, improvement or development of such land, or any part thereof, or of present or future structures thereon, including alterations or repairs, or for determination of the extent to which any such municipal ordinance, by-law or regulation affects a proposed use, enjoyment, improvement or development of such land by the erection, alteration or repair of structures thereon or otherwise as set forth in such petition.... The court may make binding determinations of right interpreting such ordinances, by-laws or regulations whether any consequential judgment or relief is or could be claimed or not."
[5] "The superior court shall have jurisdiction in equity to enforce the provisions of this chapter, and any ordinances or by-laws adopted thereunder, and may restrain by injunction violations thereof. If the attorney general questions the validity of any ordinance or by-law adopted by a city or town under this chapter, he shall bring an information in his own name as such officer in the superior court sitting in equity for the county in which such city or town is situated for a declaratory decree to determine the validity of such ordinance or by-law."
[6] "The supreme judicial court, the superior court, the land court and the probate courts, within their respective jurisdictions, may on appropriate proceedings make binding declarations of right, duty, status and other legal relations sought thereby, either before or after a breach or violation thereof has occurred in any case in which an actual controversy has arisen and is specifically set forth in the pleadings ...."
[7] "For the purpose of promoting the health, safety, convenience, morals or welfare of its inhabitants, ... any town, may by a zoning ordinance or by-law regulate and restrict the height, number of stories, and size of buildings and structures, the size and width of lots, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, agriculture, residence or other purposes; provided, however, that no ordinance or by-law which prohibits or limits the use of land for any church or other religious purpose or for any educational purpose which is religious, sectarian, denominational or public shall be valid.... For any or all of such purposes a zoning ordinance or by-law may divide the municipality into districts of such number, shape and area as may be deemed best suited to carry out the purposes of this chapter, and within such districts it may regulate and restrict the erection, construction, reconstruction, alteration or use of buildings, and structures, or use of land, and may prohibit noxious trades within the municipality or any specified part thereof. All such regulations and restrictions shall be uniform for each class or kind of buildings, structures or land, and for each class or kind of use, throughout the district...."
[8] OF DIMENSIONAL REQUIREMENTS

----------------------------------------------------------------------------
 | | | | |
 | | | | |
 Use | Lot Size | Floor Area | Lot Width | Height |
 | Minimum | Ratio | Minimum | Maximum |
 District | (Sq.ft.) | Maximum | (feet) | (feet) |
 ---------------------------------------------------------------------------|
 1-family detached | | | | |
 dwelling subject to | | | | |
 Sec. 5.11 | 7,500 | 0.3 | 75 | 35 |
 S-15 1-family detached | | | | |
 dwelling not subject to | | | | |
 Sec. 5.11 | 15,000 | 0.25 | 100 | 35 |
 Any other structure or | | | | |
 principal use | 15,000 | 0.25 | 100 | 35 |
 ---------------------------------------------------------------------------|
 1-family detached | | | | |
 dwelling subject to | | | | |
 Sec. 5.11 | 12,500 | 0.25 | 90 | 35 |
 S-25 1-family detached | | | | |
 dwelling not subject to | | | | |
 Sec. 5.11 | 25,000 | 0.2 | 120 | 35 |
 Any other structure or | | | | |
 principal use | 25,000 | 0.2 | 120 | 35 |
 ----------------------------------------------------------------------------
 ----------------------------------------------------------------------------
 | Minimum | |
 | Yard[1] | | Setback
 | (feet) | Usable | of Top of
 Use |---------------------| Open Space | Wall from
 District | | | | (% of gross | Any Lot
 | Front | Side | Rear | floor area) | Line
 | | | | | (feet)
 ----------------------------------------------------------------------------
 1-family detached | | | | |
 dwelling subject to | | | | |
 Sec. 5.11 | 25 | 15 | 40 | none | none
 S-15 1-family detached | | | | |
 dwelling not subject to | | | | |
 Sec. 5.11 | 25 | 15 | 40 | none | none
 Any other structure or | | | | |
 principal use | 25 | 15 | 40 | none | none
 ----------------------------------------------------------------------------
 1-family detached | | | | |
 dwelling subject to | | | | |
 Sec. 5.11 | 30 | 20 | 50 | none | none
 S-25 1-family detached | | | | |
 dwelling not subject to | | | | |
 Sec. 5.11 | 30 | 20 | 50 | none | none
 Any other structure or | | | | |
 principal use | 30 | 20 | 50 | none | none
 ----------------------------------------------------------------------------

Where "none" is specified for a minimum side yard in T and M  0.5 Districts, a ten (10) foot side yard is required along the street line or side lot line at the end of each row or block of attached dwellings or apartments.
[9] We consider this argument solely because it appears that as a result of our views expressed herein Holy Cross would not be bound by any part of the present zoning by-law. As applied to the facts in the cases before us we are not confronted with the issue as to whether dimensional requirements of zoning ordinances or by-laws which do not affect the use of land would be valid if applied to a religious or educational institution.
[10] "No state shall ... deny to any person within its jurisdiction the equal protection of the laws."
[11] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...."
[12] "As the public worship of GOD and instructions in piety, religion and morality, promote the happiness and prosperity of a people and the security of a republican government;  therefore, the several religious societies of this commonwealth, whether corporate or unincorporate, at any meeting legally warned and holden for that purpose, shall ever have the right to elect their pastors or religious teachers, to contract with them for their support, to raise money for erecting and repairing houses for public worship, for the maintenance of religious instruction, and for the payment of necessary expenses: and all persons belonging to any religious society shall be taken and held to be members, until they shall file with the clerk of such society, a written notice, declaring the dissolution of their membership, and thenceforth shall not be liable for any grant or contract which may be thereafter made, or entered into by such society:  and all religious sects and denominations, demeaning themselves peaceably, and as good citizens of the commonwealth, shall be equally under the protection of the law; and no subordination of any one sect or denomination to another shall ever be established by law."