MITCHELL SHEMETH *vs.* SELECTMEN OF HOLDEN & others.

Worcester.    September 26, 1944. — November 30, 1944.

Present: FIELD, C.J., QUA, DOLAN, WILKINS, & SPALDING, JJ.

*License. Abandonment. Mandamus. Election. Municipal Corporations.*
   *By-laws and ordinances.*

A landowner properly might be found to have abandoned his rights under a building permit issued to him by selectmen where, upon the selectmen revoking the permit and demanding its return by him, he returned it and unsuccessfully appealed from the revocation, then filed and unsuccessfully prosecuted a new application for a permit for substantially the same building upon the same location, and did nothing further respecting the first permit until, about a year and one half after he had returned it, he by a mandamus proceeding sought its reissuance to him.

Relief respecting a matter not even mentioned in the allegations of a petition for a writ of mandamus could not be granted in the proceeding although the petition contained a prayer for "further relief."

A landowner could not consistently insist that a town by-law requiring landowners to obtain building permits was wholly invalid and at the same time demand the issuance to him of a permit thereunder.

Even if a town by-law requiring landowners to obtain building permits from the selectmen gave the selectmen no power to refuse a permit upon a proper application, they were not required to grant it upon an application relating to a proposed building falsely described therein as a private garage but in fact designed and intended to be used by the applicant as a public garage.

PETITION for a writ of mandamus, filed in the Superior Court on April 6, 1943.

The case was heard by *Donnelly*, J., who ordered the petition dismissed. The petitioner appealed.

*M. Mooney*, for the petitioner.

*C. W. Proctor*, for the respondents.

QUA, J.   The petitioner prays for a writ of mandamus directing the respondents, who are the selectmen of Holden and the members of the board of appeals, "to return or reissue" to him a permit which the selectmen formerly gave to him to "construct and remodel" a garage "for private purposes"; for damages, and for "further relief." The facts appear partly in a statement of agreed facts which is not a case stated and partly in express findings by the trial judge.

The permit was granted on September 30, 1941.   On October 10, counsel for the town wrote the petitioner that at a meeting the previous day the selectmen had voted to revoke the permit, and notified the petitioner to return it to him at once.   "In compliance with the direction of said notice or revocation" the petitioner returned the permit as directed and caused work which had been begun upon the building to cease.   On October 14, the petitioner appealed to the board of appeals from the action of the selectmen in revoking the permit.   The board of appeals sustained the selectmen.   Thereafter, as appears from the agreed facts, the petitioner made to the selectmen a new application (to which reference will also be made later in this opinion) for a permit for a "private three car garage" and unsuccessfully prosecuted his new application before the selectmen and the board of appeals, but so far as appears he made no further effort to regain his original permit or to attack its revocation until he filed this petition on April 6, 1943.

The petitioner argues that his permit could not be revoked without a hearing after he had begun to act under it.   *General Baking Co.* v. *Street Commissioners of Boston,* 242 Mass. 194.   *Brett* v. *Building Commissioner of Brookline,* 250 Mass. 73, 79.   *Inspector of Buildings of Watertown* v. *Nelson,* 257 Mass. 346, 352.   The trial judge found that the petitioner "relinquished his rights under the original license [permit] when he turned back the license and thereafter elected to proceed as set out in the 'agreed statement of facts.'"   Whatever effect the petitioner's act in returning the document in which his permit was embodied might have had in view of his appeal to the board of appeals a few

days later, if his return of the document had been the only fact bearing upon surrender, his subsequent conduct in filing and pressing an application for a new permit for the same location and for what might have been found to be either substantially the same or a substituted building had some tendency to show a waiver or surrender of any rights under the original permit. Besides, we do not know what oral evidence may have been introduced on the subject, since the evidence is not reported. The finding that the petitioner relinquished or surrendered his original permit cannot be pronounced erroneous. A license or permit granted by public authority to perform acts which would otherwise be illegal may be voluntarily abandoned or surrendered. See Wilde, J., in *Charles River Bridge* v. *Warren Bridge,* 7 Pick. 344, 467; *Tracy* v. *Ginzberg,* 189 Mass. 260; *Jubinville* v. *Jubinville,* 313 Mass. 103, 108.

We understand that the petitioner makes the further contention that the selectmen had no power to refuse his second application for a permit made on November 8, 1941. He asserts that the town by-law requiring building permits and authorizing the selectmen to issue them is invalid in that it sets up no rules or standards for their guidance and purports to confer upon them arbitrary power to grant or to refuse permits in their uncontrolled discretion or even whim. The petitioner cites *Newton* v. *Belger,* 143 Mass. 598; *Goldstein* v. *Conner,* 212 Mass. 57, *Kenney* v. *Building Commissioners of Melrose,* 315 Mass. 291, and similar cases. There are several answers to this contention.

In the first place, no cause of action based upon the refusal to grant a permit upon the application of November 8 is stated in any form of words in the petition. The petition does not even mention that application. Relief based upon its refusal would be beyond the scope of the petition. A general prayer cannot supply the place of necessary allegations in the petition.

In the second place, the petitioner cannot demand a permit under a by-law and at the same time insist that the by-law is wholly invalid. *Pitkin* v. *Springfield,* 112 Mass. 509. *New York Life Ins. Co.* v. *Hardison,* 199 Mass. 190,

196. *Stevens, landowner,* 228 Mass. 368, 373. *Bogigian* v. *Commissioner of Corporations & Taxation,* 248 Mass. 545. *Criscuolo* v. *Department of Public Utilities,* 302 Mass. 438, 441. *Hurley* v. *Commission of Fisheries,* 257 U. S. 223, 225. The court would not command the respondents to perform the futile act of issuing a permit which they had no power to issue. *White Fuel Corp.* v. *Street Commissioners of Boston,* 289 Mass. 337, 338.

In the third place, if the by-law can be considered valid only to the extent that the landowner must secure a permit for statistical purposes, to assist the assessors in valuing estates, or for some similar purpose, but without conferring upon the selectmen any power to refuse an application duly and properly made, still the petitioner is met by adverse findings of fact. In his application of November 8 the petitioner applies "for the construction of a private three car garage" which "is to be used entirely for private purposes" and "will be large enough only for the reasonable housing of three motor vehicles." The judge found upon evidence not reported that the proposed garage "was not intended for use as a private garage for the garaging of his own automobiles but was designed and intended to be used by him as a public garage." The parties agreed that it was to be thirty-two feet wide and thirty-eight feet "in depth" and nearly twelve feet high. The judge found that it was to include a hoist for the repair and greasing of automobiles. The petitioner had attempted to get abutters to sign waivers which would have enabled him "to file a petition for a public garage" to be used in connection with a gasoline station already on the premises, but he had failed to get the necessary signatures. He "attempted and intended to erect a garage under a private license which would be used as a public garage in accordance with his original purpose." The selectmen "acted in accord with their honest judgment as to the best interest of the town." These facts and findings show that the petitioner's application of November 8 was made upon false representations and in bad faith. It would be useless and misleading even for statistical purposes. If the respondents had under the

by-law any power at all to act in the matter they could not be required to grant a permit upon a fraudulent application of this kind. *Higgins* v. *License Commissioners of Quincy*, 308 Mass. 142, 146, and cases cited. Nor would the court in its discretion command them to grant one.

It is true, as the petitioner suggests, that he still owns his land and has a right to take lawful steps for the erection upon it of any lawful building in a lawful manner. If the by-law is wholly invalid, he may proceed without regard to it, and may employ any appropriate legal remedy to prevent interference with his exercise of his rights. If the by-law is valid, nothing has occurred that permanently deprives him of any lawful use of his land. He may still apply in good faith for a new permit, truthfully describing the building he proposes to erect, and may insist upon the exercise by the respondents of an honest and unbiased judgment within the scope of such power as they have.

We have not passed upon the validity of the by-law in any aspect, since it is plain that we are not required to do so in order to decide the case.

No question has been raised but that this case is properly here. Since the practical result would be the same in any event, we have assumed that the entry "Petition dismissed" on April 7, 1944, was a "final judgment" from which the petitioner appealed under the authority of G. L. (Ter. Ed.) c. 213, § 1D, inserted by St. 1943, c. 374, § 4.

*Judgment affirmed.*