STATE of Maine, et al.

v.

Roland SIROIS.

Supreme Judicial Court of Maine.

Argued April 30, 1984.

Decided July 17, 1984.

James E. Tierney, Atty. Gen., Gregory W. Sample (orally), Asst. Atty. Gen., Augusta, for plaintiffs.

William J. Smith (orally), Van Buren, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN, and SCOLNIK, JJ.

McKUSICK, Chief Justice.

Defendant Roland Sirois appeals from the December 7, 1983, judgment of the Superior Court (Aroostook County) ordering him to comply with the terms of a wastewater discharge license issued to him by the Department of Environmental Protection (the Department). He contends

that the grant of injunctive relief was improper because his discharge license was no longer in effect at the time the Superior Court entered the injunction. We hold that the grant of injunctive relief was proper regardless of whether the license remained in effect. We find, however, that the Superior Court's order for continued operation of the waste disposal system should have been limited to preventing any future violation of the environmental protection statute by defendant Sirois.

## I.

The facts relevant to the issues presented on appeal are simply stated. In 1975 Mr. Sirois acquired a parcel of land upon which he developed the Queen Village subdivision, a housing development in Frenchville. To serve the anticipated needs of the subdivision, defendant constructed a sewer line connecting individual lots with a holding pond or "lagoon." The lagoon was in turn connected to a chlorinator that discharged into a storm ditch running to the nearby St. John River. Properly operated, the system first would oxidize the waterborne wastes in the lagoon through aeration and bacterial action and then, before discharging the wastewater, would destroy the carryover microflora through chlorination.

Although the Town of Frenchville obtained a wastewater discharge license for the system from the Department in 1975, it was determined through subsequent litigation between Mr. Sirois and the Town that the Town was under no legal obligation to operate and maintain the treatment facility. *See Sirois v. Town of Frenchville*, 441 A.2d 291 (Me.1982). In early 1979 defendant applied for transfer to him of the license issued to the Town. By an order dated March 14, 1979, the Board of Environmental Protection granted defendant a license expiring by its terms on March 14, 1984. *See* 38 M.R.S.A. § 414, *repealed and replaced by* P.L. 1979, ch. 444. That license authorized defendant to discharge 9,200 gallons per day of treated wastewater from the housing subdivision to the St. John River, subject to specific limitations on the content of the discharged wastewater and also subject to the requirement that

> [t]he licensee shall at all times maintain in good working order and operate at maximum efficiency all wastewater treatment and/or control facilities.

By a letter dated May 3, 1979, Mr. Sirois attempted to surrender the license to the Department. The Department rejected the attempted surrender and returned the license to him later that month. Then, on June 27, 1979, defendant conveyed the treatment facility and surrounding land to Roland Sirois Home Construction, Inc., a corporation owned by him and his immediate family.

After several unsuccessful attempts by the Department to induce Mr. Sirois to comply with the terms of the license, the State commenced the present action in July of 1983, seeking a declaration that he had violated the discharge license and also injunctive relief pursuant to 38 M.R.S.A. § 348 (1978).[1] On October 4, 1983, a full hearing was held, from which the trial justice was justified in finding the following facts. Although the treatment facility operated properly when it first became functional in 1977, it was not operated as intended from 1979 through the date of the hearing. Mr. Sirois took out the chlorinator, disconnected electrical service to the aerator, and plugged the discharge pipe to the storm ditch. Notwithstanding the non-

---

1. 38 M.R.S.A. § 348 (1978) provides in pertinent part:

> (1) *In the event of a violation of any provision* of the laws administered by the Department of Environmental Protection or *of any* order, regulation, *license, permit, approval or decision of the Board of Environmental Protection* or decree of the court, as the case may be, the Attorney General may institute injunction proceedings to enjoin any further violation thereof, a civil or criminal action or any appropriate combination thereof without recourse to any other provision of law administered by the Department of Environmental Protection.

(Emphasis added)

operability of the aerator and the chlorinator, Mr. Sirois has continued to allow sewage to flow through the system. For about four years prior to the hearing, raw sewage flowed into the lagoon and then was discharged from the lagoon by simply spilling over onto the surrounding land, seeping into the soil. At the time of the hearing, at least ten houses, all owned by persons other than Mr. Sirois, were connected to the system.

By judgment entered on December 7, 1983, the Superior Court found Mr. Sirois in violation of his obligations under the license and ordered him to return the system, including the chlorinator, aerator, and discharge pipe, to working order on or before December 31, 1983. The court further ordered Mr. Sirois to operate the system in accordance with the license until relieved of that responsibility by the Department. Defendant took a timely appeal to the Law Court from the Superior Court's injunction.

## II.

Defendant attacks the injunction on the ground that the discharge license, upon which the injunction was based, was rendered ineffective as to him by his attempted surrender of the license to the Department. He contends that by returning the license to the Department accompanied by a letter stating that he no longer wanted it, he was released from his obligations under the license. In support of this contention he cites authority stating that a license is the extension of a privilege to do that which would otherwise be unlawful and may be terminated by surrender or abandonment. *See, e.g., Shemeth v. Selectmen of Holden,* 317 Mass. 278, 280, 58 N.E.2d 6, 7 (1944) (building permit); 53 C.J.S. *Licenses* §§ 1, 43 (1948); *see also Wolfe v. Runnels,* 90 Me. 253, 38 A. 100 (1897) (vendor's license).

■■■ Defendant gains nothing by this argument. Even if defendant's attempted surrender of the license to the Department successfully released him from his license obligations, he would find himself in the position of one who, without a license, discharges pollutants into the waters of the state and maintains a surface waste water disposal system. Both of those activities are unlawful unless licensed by the Board of Environmental Protection. *See* 38 M.R.S.A. § 413(1),[2] (1–A)[3] (1978). Furthermore, 38 M.R.S.A. § 348(1) authorizes the Attorney General to seek an injunction to redress "a violation of any provision of the laws administered by the Department of Environmental Protection,"[4] including those provisions prohibiting defendant's conduct unless duly licensed.

■■■ The evidence showed that at all pertinent times prior to the hearing defendant continued to receive raw sewage in his

**2.** 38 M.R.S.A. § 413(1) (1978) provides:
No person shall directly or indirectly discharge or cause to be discharged, any pollutant without first obtaining a license therefor from the [Board of Environmental Protection].
The term "pollutant" is defined to include sewage. 38 M.R.S.A. § 361–A(4–A) (1978). "Discharge" means
any spilling, leaking, pumping, pouring, emptying, dumping, disposing or other addition of any pollutant to water of the State.
38 M.R.S.A. § 361–A(1) (1978). "Water of the State" is defined as
any and all surface and subsurface waters which are contained within, flow through, or under or border upon this State or any portion thereof, including the marginal and high seas, except such waters as are confined and retained completely upon the property of one

person and do not drain into or connect with any other waters of the State.
38 M.R.S.A. § 361–A(7) (1978).

**3.** 38 M.R.S.A. § 413(1–A) (1978) states:
No person shall install, operate or maintain a surface waste water disposal system without first obtaining a license therefor from the board.
A "surface waste water disposal system" is defined as
any system for disposal of waste waters on the surface of the earth, including, but not limited to, *holding ponds,* surface application and injection systems.
38 M.R.S.A. § 361–A(4–B) (1978) (emphasis added).

**4.** *See* note 1 above.

holding pond and to allow that sewage to spill over the banks of the holding pond and flow onto the surrounding land. The fact that defendant effected his discharge by allowing the overflow from the holding pond to seep into the water table through the soil rather than by discharging treated effluent directly into the St. John River in accordance with the license made his activity no less a "discharge," which is defined in the statute to include indirect addition of pollutants to the subsurface waters of the State. *See* 38 M.R.S.A. § 361–A(1), (4–A), (7) (1978). It is uncontrovertible that defendant has also continued to "operate or maintain a surface waste water disposal system," another activity for which a license is required. 38 M.R.S.A. § 413(1–A). Although defendant did not operate the system in accordance with the license, nonetheless, by allowing raw sewage to continue to flow into and out of the holding pond he did use the facility as a system for surface disposal of sewage within the meaning of the environmental protection statutes.

■ Thus, even if defendant was successful in avoiding the license obligations through his attempted surrender to the Department, the evidence clearly showed that he was still subject to injunctive relief for his unlicensed discharge and his maintenance of a surface waste water disposal system. Furthermore, defendant could not escape liability for this conduct by transferring the sewage treatment facility to his family corporation. Defendant's counsel admitted that the purpose of that transfer was to avoid his obligations under the discharge license,[5] and the Superior Court held that the transfer was ineffective to relieve defendant of his responsibility under the license. On this record the Superior Court was entirely justified in concluding that defendant's family corporation was merely his *alter ego* and had no independent economic reality. "It is well settled ... that a court will disregard the fiction of a corporation's separate identity whenever the concept is asserted in an endeavor to circumvent a statute and defeat legislative policy." *Brennan v. Saco Construction, Inc.*, 381 A.2d 656, 662 (Me. 1978). Whether defendant's obligation for the proper operation of the waste disposal facility arises from the license or from the underlying environmental laws that make an unlicensed facility illegal, his sham transfer of the facility into the name of his own corporation in no way affects the powers of the equity court to enforce those obligations directly against him.

■ On the basis of the evidence of defendant's continued discharge and operation of a surface waste water disposal system, the Superior Court, without any further showing, was justified in granting injunctive relief whether or not the license was in effect. *Ackerman v. Tri-City Geriatric & Health Care, Inc.*, 55 Ohio St.2d 51, 56, 378 N.E.2d 145, 148–49 (1978) (where an injunction is authorized by stat-

**5.** At the time of the transfer of the facility to the corporation, 38 M.R.S.A. § 413(3) (1978) provided:

In the event that any person possessing a license issued by the board shall transfer the ownership of the facility or structure which is the source of such licensed discharge, the license granted by the board shall upon such transfer be extinguished and void and the new owner thereof shall be required to obtain a license in the manner required by this subchapter.

P.L.1979, ch. 444, § 3, effective September 14, 1979, repealed and replaced this provision, so as to read:

In the event that any person possessing a license issued by the board shall transfer the ownership of the property, facility or structure which is the source of a licensed discharge, without transfer of the license being approved by the board, the license granted by the board shall continue to authorize a discharge within the limits and subject to the terms and conditions stated in the license, provided that the parties to the transfer shall be jointly and severally liable for any violation thereof until such time as the board approves transfer or issuance of a waste discharge license to the new owner. The board may in its discretion require the new owner to apply for a new license, or may approve transfer of the existing license upon a satisfactory showing that the new owner can abide by its terms and conditions.

ute designed to provide a government agent means to enforce public policy, no balancing of equities is necessary); *UV Industries, Inc. v. Posner,* 466 F.Supp. 1251, 1255 (D.Me.1979) (where statute authorizes injunctive relief upon showing of a violation, the party seeking such relief need not make a showing of irreparable harm in the normal equity sense); 7 *Moore's Federal Practice* § 65.04(1) n. 7b (2d ed. 1983).

## III.

 The Superior Court's injunction of December 7, 1983, came in two parts; it ordered defendant 1) to return the treatment facility to proper working order by December 31, 1983, and thereafter 2) to operate the facility in accordance with the license until released from that responsibility by the Department. The first part of the injunction was justified whether or not the license then remained in effect. It is uncontroverted that at the time the Superior Court entered its injunction defendant had allowed, and was continuing to allow, raw sewage to flow into and to discharge from his disposal facility. If the license was then in effect, the first part of the injunction was a proper means of requiring compliance with the terms of the license pursuant to 38 M.R.S.A. § 348. Even if the license was no longer in effect, 38 M.R.S.A. § 348 would authorize the Superior Court to halt the unlicensed discharge and to order proper treatment of any sewage accepted in the Sirois facility. The first part of the injunction, ordering defendant to return the treatment facility to working order by December 31, 1983, so as to treat the otherwise unlawful discharge, was fully consistent with that authorization.

However, the second part of the injunction, which imposed an open-ended duty on defendant to operate the facility once restored until relieved of that duty by the Department, exceeded the Superior Court's statutory authorization. Defendant's duty to operate the system could continue only so long as he continued to perform the activities that the statute makes unlawful without a license. By terminating his discharge and his use of the holding pond as a waste disposal system,[6] defendant could effectively remove the need for the license and the basis for the grant of injunctive relief. The second part of the Superior Court's injunction fails to recognize that fact, in that it gives the Department the unguided power to require defendant's continued operation of the facility indefinitely. We therefore vacate the second part of the injunction and remand the case to the Superior Court so that it may fashion an appropriate order that will go no further than is necessary to halt defendant's violation of the environmental protection laws and to prevent renewed violations.

The entry is:

Judgment affirmed insofar as it ordered defendant to restore the system to proper working order on or before December 31, 1983; the remainder of the judgment is vacated.

Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.

---

**6.** The record in this case does not reveal whether defendant has any contractual or other legal obligation to the Queens Village homeowners or others to continue to permit the sewage inflow to his holding pond. In any event that question is beyond the scope of this litigation between only the Department and Sirois.