MLR|SC#152-17

STATE OF MAINE                                    SUPERIOR COURT
ANDROSCOGGIN, ss    RECEIVED & FILED    CIVIL ACTION
                         JAN 2 3 2017              DOCKET NO. AUBSC-CV-12-60

STATE OF MAINE,          ANDROSCOGGIN
                         SUPERIOR COURT
         Plaintiff,                      )        ORDER ON PERMANENT
                                         )        INJUNCTION
RONALD CHAMPAGNE,                        )
                                         )
         Defendant.                      )

Before the Court is the State's Motion for Permanent Injunction.

I.      Background

On March 22, 2012, Paul Groleau ("Groleau") stopped at the causeway or boat launch on Lake Auburn on his way home. According to the State, a Cadillac up to Groleau's Subaru, rolled down the driver side window, and yelled: "You're a fucking fag and I'm gonna ram your ass right into the lake." The Cadillac then took off and began to make a U-turn. Groleau exited the parking area and headed back towards Auburn. The Cadillac turned around and began to follow Groleau. Groleau called 9-1-1 from his cell phone. The Cadillac drove into the back of the Subaru. The Cadillac drove into the back of the Subaru a second time, knocking the phone out of Groleau's hand. Groleau provided the dispatcher with information that the car was a Cadillac and a partial reading of the license plate on the Cadillac. The only car registered matching the provided description belongs to Defendant Ronald Champagne.

When Deputy Lovering spoke with the Defendant that same evening, Defendant referred to the Lake Auburn boat launch as a "pickle park" and stated that he "didn't want to go over there because there was nothing but queers there."

1

According to Officer Mark Lemos' testimony, when Lemos went to arrest the Defendant on March 28, 2012, the Defendant "began talking about the causeway, specifically referring to the queers at the causeway" stating that "he couldn't go down to watch a sunset with his girlfriend because of all the queers."

On April 24, 2012, the State filed a Complaint seeking relief from Defendant's alleged violation of the Maine Civil Rights Act. On June 6, 2012, the Court heard argument on the State's Motion for Preliminary Injunction. The Court issued an order of preliminary injunction that same day. Hearing was held on the State's Motion for Permanent Injunction six-years later, on June 29, 2016. In person testimony was provided by Defendant Ronald Champagne, James Roberge, Detective Travis Lovering, Officer Lemos, William Scott Jr., "Skip" Edgar Haines, and Alan Girouard.

II.     Discussion

The State seeks an order of the Court granting a permanent injunction pursuant to 5 M.R.S. § 4681."Before granting a preliminary or permanent injunction, the Court must find that four criteria are met:

> (1) that plaintiff will suffer irreparable injury if the injunction is not granted,
> (2) that such injury outweighs any harm which granting the injunctive relief would inflict on the defendant,
> (3) that plaintiff has exhibited a likelihood of success on the merits (at most, a probability; at least, a substantial possibility),
> (4) that the public interest will not be adversely affected by granting the injunction."

*Ingraham v. University of Maine*, 441 A.2d 691, 693 (Me. 1982) However, where the legislature has expressly authorized the Attorney General to seek an injunctive relief

2

in order to enforce public policy, the State is not required to make a showing of either irreparable harm or a balance of the equities.[1] Therefore, the Court considers only whether the State has carried its burden of showing success on the merits.

The State brings this action pursuant to 5 M.R.S. § 4681, which authorizes the Maine Attorney General to seek injunction or other equitable relief for violations of the Maine Civil Rights Act. In order for the State to succeed, the State must show that the Defendant violated the Maine Civil Rights Act by interfering with Groleau's "right to engage in lawful activities without being subject to physical force or violence, damage or destruction of property, trespass on property or the threat of physical force or violence, damage or destruction of property or trespass on property motivated by reason of race, color, religion, sex, ancestry, national origin, physical or mental disability or sexual orientation." 5 M.R.S. § 4684-A. At trial, the State sought to prove that Defendant interfered with Groleau's right to engage in lawful activities by threatening violence and committing acts of physical force causing property damage and damage to Groleau's person, motivated by a belief that Groleau was homosexual.

---

[1] *See State v. Sirois*, 478 A.2d 1117, 1121-1122, 1984 Me. LEXIS 743, *11 (Me. 1984) "On the basis of the evidence of defendant's continued discharge and operation of a surface waste water disposal system, the Superior Court, without any further showing, was justified in granting injunctive relief whether or not the license was in effect. *Ackerman v. Tri-City Geriatric & Health Care, Inc.*, 55 Ohio St. 2d 51, 56, 378 N.E.2d 145, 148-49 (1978) (where an injunction is authorized by statute designed to provide a government agent means to enforce public policy, no balancing of equities is necessary); *UV Industries, Inc. v. Posner*, 466 F. Supp. 1251, 1255 (D. Me. 1979) (where statute authorizes injunctive relief upon showing of a violation, the party seeking such relief need not make a showing of irreparable harm in the normal equity sense); 7 Moore's Federal Practice § 65.04(1) n.7b (2d ed. 1983)."

The only element in dispute is Defendant's motivation. Defendant does not dispute that he chased Groleau and drove his truck into the back of Groleau's car. Defendant does dispute the manner in which the incident began and contends that he did not target Groleau because he believed Groleau to be gay, but instead because he believed that Groleau was married and was at the boat launch in order to have an extramarital affair. Defendant contends that he is Christian and believes that preventing sin is a teaching of his religion.

At the June 29, 2016 hearing, Defendant offered the following evidence in support of his argument that the incident was motivated by his religious belief concerning the sanctity of marriage, not by an understanding of Groleau's sexual orientation. Defendant testified to his positive relationships with the Somailian community and people of different racial backgrounds at his auto repair business. He testified that he treated them respectfully and charged them fairly, often giving them price reductions. Defendant testified that he has "nothing against queers", knows gay and lesbian individuals, and that they are "fun people". He also testified stating "God doesn't want homosexual relations to take place". Defendant asserted that, on March 22, 2012, the incident began by Groleau calling Defendant a "fucking faggot".

James Roberge, a long-time friend of Defendant, testified on behalf of Defendant. He testified to Defendant's positive relationships with members of the Somalian community and Defendant's tendancy to give breaks on auto repair prices to Defendant's Somalian clientele, bolstering Defendant's testimony. Roberge testified that Defendant was respectful to Roberge son, who is gay. Roberge testified

4

to concerns he had prior to the incident about Defendant's mental state and Defendant's decision to stop taking his medications. Roberge stated that the two of them had previously discussed the sexual activity that occurred at the boat launch and that Defendant had objected to any extramarital encounters occurring there. Roberge testified that two years before the incident, Defendant told Roberge that God was telling Defendant to "clean up this mess" referring to the activities occurring at the boat launch.

William Scott, Jr., a mechanic and close friend of Defendant; "Skip" Edgar Haines, who has known Defendant for 12 years and goes to his repair shop; and Alan Girouard, who has known Defendant for 3 or 4 years, all testified on behalf of Defendant and stated that Defendant deals respectfully with individuals of different backgrounds.

The State presented evidence that Defendant was motivated by Groleau's sexual orientation. The State presented testimony of Deputy Lovering from the hearing on preliminary injunction that Defendant called the boat launch area a "pickle park", that "there was nothing but queers there and there were guys in every car", and that he "didn't want to go over there because there was nothing but queers there." (Tr. 16-17). On March 28, when Officer Lemos arrested Champagne, Officer Lemos testified that Defendant "began talking about the causeway, specifically referring to the queers at the causeway. He made reference to that he couldn't go down to watch a sunset with his girlfriend because of all the queers." (Tr. 40).

The Court finds that Defendant's actions of March 22, 2012 were motivated by his perception of Groleau's sexual orientation. Based upon Defendant's threats at

the time of the incident, as relayed by Groleau, and based upon Defendant's continued reference to the "pickle park" and his discomfort with the boat launch area because "there was nothing but queers there", the Court finds that the State has met its burden of proving by a preponderance of the evidence that Defendant was motivated by his perception of Groleau's sexual orientation.

III.    Conclusion

The Court grants the State's motion for permanent injunction.

Defendant, together with his agents, employees, assigns, successors, and anyone acting under his control or authority in concert or participation with him, is permanently enjoined from engaging or attempting to engage in the following conduct:

1. threatening or using physical force or violence against Paul Groleau;
2. threatening or using physical force or violence against any person by reason of that person's race, color, religion, sex, ancestry, national origin, physical or mental disability or sexual orientation;
3. causing damage to, destruction of or trespass upon the residence of Paul Groleau or his household;
4. causing damage to, destruction of or trespass upon the property of any person motivated by reason of race, color, religion, sex, ancestry, national origin, physical or mental disability or sexual orientation;
5. threatening or using physical force, violence, harassment, damage to property or trespass upon property, against any person because that person was a witness to the conduct alleged in this complaint, or because that person complained of or testified concerning that conduct or cooperated in any investigation thereof;
6. harassing, intimidating, speaking to, telephoning or otherwise communicating with Paul Groleau;
7. knowingly coming within 150 feet of Paul Groleau, his residence or place of employment;
8. encouraging or causing any other person to engage in conduct prohibited in paragraphs 1 through 7 above, or assisting any person in such conduct.

6

Pursuant to the Maine Civil Rights Act (5 M.R.S. § 4681): ANY PERSON WHO KNOWINGLY VIOLATES THIS ORDER COMMITS A CLASS D CRIME PUNISHABLE UP TO 364 DAYS IN JAIL AND A FINE OF NOT MORE THAN $2,000.00.

DATE: 1/23/17

MaryGay Kennedy
Justice/Superior Court